**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **SHARON PARSLEY, Individually, and** § <br> **as Administrator of, and on behalf of, the** § <br> **Estate of RONNIE PARSLEY., Deceased,** § <br> § <br> **Plaintiffs,** § <br> § **CIVIL ACTION NO. _____** <br> **v.** § <br> § <br> **WTG FUELS, INC., d/b/a WEST** § <br> **TEXAS GAS FUELS, INC.,** § <br> § <br> **Defendant.** | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiffs Sharon Parsley, Individually, and as Administrator of, and on behalf of, the Estate of Ronnie Parsley, deceased, files this, an Original Complaint, against Defendant WTH Fuels, Inc., d/b/a West Texas Gas Fuel, Inc., for violating state and federal law. The causes of action and summary of claims relating thereto are addressed below:

### I. PARTIES, JURISDICTION AND VENUE

1.  Plaintiffs Sharon Parsley, Individually, and as Administrator of, and on behalf of, the Estate of RONNIE PARSLEY, deceased, (hereinafter referred to as "Plaintiff"), has in all relevant time periods resided in the State of Texas. Plaintiff is the "independent executor" of the Estate of Ronnie Parsley, with full rights to bring this case and distribute any potential assets obtained therefrom.

2.  Defendant WTG Fuels, Inc., d/b/a West Texas Gas Fuel, Inc., (in its assumed or common name), ("Defendant" or "WTG"), is a Texas corporation operating various locations in the State of Texas. Defendant may be served through its registered agent for service in Texas, Capitol Corporate Services, Inc., 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

3.  The court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C.

§1331 & §1343.  Venue exists in this district and division as detailed in 28 U.S.C. §1391.

4. On or about August 31, 2017, Plaintiff filed a "Charge of Discrimination" with the Texas Workforce Commission – Civil Rights Division ("TWC"), and the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination.  Plaintiff received a Determination letter from the EEOC on September 25, 2018, making the finding that Defendant violated the federal laws with respect to the termination of Ronnie Parsley.  On November 30, 2018, the EEOC issued its Notice of Right to Sue, also confirming these violations.

5. This action is being commenced within the required time limits of the Americans with Disabilities Act ("ADA"), 42 U.S. C. § § 12101, as (a) the Charge of Discrimination was filed within 300 days of the discrimination/termination/retaliation, and (b) this lawsuit is being filed within 90 days of the Notice of Right to Sue being issued by the EEOC.

6. This action is also being commenced within the required time limits of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE. §§ 21.001 *et. seq.*, in that (a) the Charge was filed with the TWC within 180 days of the actions being complained about in this suit, (b) this lawsuit was filed after waiting more than 180 days from the date the Charge was filed with the TWC, and (c) this lawsuit was filed within two (2) years of the date the Charge was filed with the TWC.

## II. FACTUAL BACKGROUND

5. Ronnie Parsley ("Parsley") was employed by WTG for approximately thirteen years. At the time of his termination he was a truck driver based out of Cisco, Texas.

6. Beginning in April 2016, Parsley began suffering from kidney stones and underwent an outpatient procedure. In May 2016, following this outpatient procedure, Parsley was referred to an oncology surgeon.  Shortly thereafter, on July 7, 2016, Parsley was given a diagnosis of pancreatic cancer. He informed his supervisor about his diagnosis, and told him he would begin chemotherapy treatment.

7. Thereafter, beginning in July 2016, Parsley underwent chemotherapy treatment twice per week, and experienced medical problems related thereto including, but not limited to: weight loss, neuropathy, mucositis, trouble eating and swallowing, fatigue, mouth sores, and nausea/vomiting. These medical problems led to various surgeries and medical treatments.

8. Parsley informed his supervisor of his medical problems, and initially Parsley was allowed to return to work – on average three (3) days per week while he underwent chemotherapy.  When Parsley asked his supervisor if he needed to file any paperwork, Parsley was told by his supervisor that the area supervisor of WTG, (located in Abilene, Texas), had been informed of the circumstances and that there was no need for further paperwork as WTG would take care of him.

9. During his battle with pancreatic cancer, Parsley underwent various medical procedures that required some hospitalization.  Normally he would only be hospitalized a few days and then come back to work.  Again, WTG was aware of Parsley's need to be off work and approved these medically-related absences. In fact, Parsley was even encouraged to work – and did – as evidenced by his time records, which were approved by his supervisor.

10. In April of 2017, Parsley was again admitted to the hospital due to the side effects of chemotherapy and radiation – where he remained for two weeks. Parsley was allowed to work a modified schedule, and when he returned to work after this hospital stay Parsley was told by WTG, "do what you can and not overdo it" and that it was "okay to leave work and go home" if he needed.

11. On May 17, 2017, despite his supervisors' assurances – and with no warning – the wife of CEO of WTG mailed a termination letter to Parsley stating, "According to our records you have been unable to report to work due to your personal health insurance [sic] since approximately October 2016, a little over 7 months. . . . We are terminating your employment and associated benefits effective May 31, 2017." This information is completely false as at the

_____
**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                                                                                          **PAGE 3**

time of termination he was working for WTG. Parsley talked to his supervisor and asked why he was being terminated, and why the letter said he had not been working since October of 2016, but Parsley was never given a response.

12. Parsley was terminated because of his disability, (or perceived disability), and because WTG did not want to continue to provide any reasonable accommodation for same. There was no reason to terminate Parsley – as providing him with a modified schedule during his medical procedures and recuperation did not create any undue burden or hardship on WTG. In addition, WTG failed to even engage in the interactive process to seek an adequate accommodation for his disabilities – as required by the disability laws.

13. The EEOC investigated the termination of Parsley by WTG, as well as another disability discrimination matter involving another employee. After doing these investigations, the EEOC determined that WTG had violated various federal laws with respect to both employees.

14. Specifically, on March 14, 2018, the EEOC issued a Determination letter for a matter involving another employee, confirming that "[d]uring the course of the investigation it was determined that [WTG] summarily discharged . . . Parsley, who was suffering from cancer. At the time of discharge, he was able to continue working and was not seeking further time off. The Commission finds that [WTG] discharged Mr. Parsley based on his disability."

15. On September 25, 2018, the EEOC stated in a Determination letter as follows:

> Charging Party worked for Respondent as a truck driver. During the course of the investigation, it was determined that Respondent summarily discharged Ronnie Parsley, who had a disability covered under the ADA. At the time of the discharge, he was able to continue working and was not seeking further time off. The Commission finds that Respondent discharged Mr. Parsley based on his disability.
>
> Respondent does not have a written medical leave policy, nor a written attendance policy. No effort was made to engage in an interactive process to attempt to achieve further accommodation of his impairment.

___

. . . [T]here is reason to believe that a violation of the ADA has occurred.

16. On November 30, 2018, the EEOC issued a Notice of Right to Sue, stating that the "EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge . . . ."

17. WTG terminated Parsley's employment because of his disability – or perceived disability – without even attempting to engage in the interactive process. Had they provided a reasonable accommodation Parsley would have remained employed, without creating any undue burden on WTG. WTG also terminated Parsley for the time he was forced to take off work for his serious health condition, and/or the time he was expected to take off work.

### III.   CAUSES OF ACTION

#### A. VIOLATION OF TEXAS COMMISSION ON HUMAN RIGHTS ACT AND AMERICANS WITH DISABILITIES ACT

18. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 17 as if fully stated herein.

19. Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim under the Americans with Disabilities Act ("ADA"), 42 U.S. C. § § 12101 *et. seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE. §§ 21.001 *et. seq.*

20. Defendant is an "employer" as defined by the TCHRA and ADA, and Defendant employs more than 15 persons.

21. When Parsley worked for Defendant, he was an "employee" as defined by the TCHRA and ADA.

22. Parsley was a qualified individual person with a disability as defined by the TCHRA and ADA.

23. Defendant discriminated against Parsley, and subsequently discharged him, as result of his disability, record of said disability, and/or because it regarded him as disabled.

Defendant also failed to accommodate Parsley's disability. Because of his medical condition, Parsley had physical impairments that affected major life activities. In spite of Parsley's impairment, he was still qualified to perform the essential functions of her job.

24. As a result of Defendant's discriminatory actions in violation of the TCHRA and ADA, Parsley suffered actual damages in the form of lost wages and benefits, as well as emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. As a result of these willful violations of the law, Plaintiff requests that all allowable compensatory and punitive damages be awarded, as outlined in the TCHRA and ADA, as well as all equitable relief, and attorney fees and costs.

### B. FAMILY MEDICAL LEAVE ACT VIOLATION

25. Plaintiff re-alleges and incorporates the allegations contained in Paragraphs 1 through 17 as if fully stated herein.

26. Plaintiff has satisfied all jurisdictional prerequisites in connection with this claim as required under the Family Medical Leave Act ("FMLA), 29 U.S.C. §§ 2601 *et. seq*.

27. Defendant is an "employer" as defined by the FMLA.

28. During the time that Parsley was employed by Defendant, he was an "eligible employee" as defined by the FMLA.

29. While Parsley was employed by Defendant, he had medical conditions that would be defined as a "serious health condition" under the FMLA.

30. Parsley was entitled to medical leave for his serious health conditions as provided for in the FMLA.

31. Prior to exhausting the twelve (12) weeks of medical leave allowed under the FMLA, (as discussed in 29 U.S.C. § 2612(a)(1)), Defendant terminated Parsley's employment.

32. Defendant terminated Parsley's employment for the time he was forced to take off work for his serious health condition, and/or the time he was expected to take off work, (which

would not have exceeded twelve (12) weeks under the statutory time period). These actions were willful and not in good faith, and they violate the protections of the FMLA.

33. As a result of Defendant's discriminatory actions in violation of the FMLA, Parsley suffered actual damages in the form of lost wages and benefits, and other losses. As a result of these willful violations of the law – which were not in good faith − Plaintiff requests that all allowable compensatory and liquidated damages allowed by the FMLA, as well as all equitable relief, attorney fees and costs.

## IV. JURY DEMAND

Plaintiff requests a trial by jury on all claims.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits, the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law, (including mental anguish and loss of enjoyment of life);

c. Judgment against Defendant for liquidated and/or punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress its violation of the law, (including possibly injunctive relief to prevent further violations);

e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f. Costs of suit, including attorneys' fees;

g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled under the FMLA, ADA, and TCHRA.

Respectfully submitted by:

**/s/ Robert (Bobby) Lee**
Robert (Bobby) Lee
State Bar No. 00787888
lee@l-b-law.com
Megan Dixon
State Bar No. 24079901
dixon@l-b-law.com
Meagan Whitley
State Bar No. 24088629
whitley@l-b-law.com
**LEE & BRAZIEL, LLP**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
Tel:  (214) 749-1400
Fax:  (214) 749-1010

**ATTORNEYS FOR PLAINTIFF**